Commonwealth of PENNSYLVANIA,
DEPARTMENT OF PUBLIC
WELFARE, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

No. CIV. A. 00–265.

United States District Court,
W.D. Pennsylvania.

Dec. 15, 2000.

Jason W. Manne, Pittsburgh, PA, for Penn., Dept. of Public Welfare.

## MEMORANDUM ORDER

LANCASTER, District Judge.

On February 15, 2000, this case was referred to United States Magistrate Judge Francis X. Caiazza for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C.§§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's Report and Recommendation, filed on November 2, 2000, recommended that the Defendants' Motion to Dismiss filed at document number seven (#7) should be denied. The parties were allowed ten (10) days from the date of service to file objections. Service was made on all parties and objections were filed by the Plaintiff on November 20, 2000. After de novo review on the pleadings and documents in the case, together with the Report and Recommendation and objections thereto, the following order is entered:

AND NOW, this 15th day of December, 2000;

IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss is denied.

The Report and Recommendation of Magistrate Judge Caiazza, Document No. 21, dated November 2, 2000, is adopted as the opinion of the court.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CAIAZZA, United States Magistrate Judge.

### I. RECOMMENDATION

For the reasons stated below, it is recommended that the Defendants' Motion to Dismiss (Doc. 7) be denied.

### II. REPORT

#### BACKGROUND

A. Procedural History

The Commonwealth of Pennsylvania's Department of Public Welfare ("the Plaintiff" or "the Commonwealth") filed this lawsuit on February 8, 2000 challenging the constitutionality of Defendant David Lett's ("Mr. Lett's") appointment as Regional Administrator for the Administration for Children and Families. See generally Compl.[1] The Commonwealth asserts that Mr. Lett's appointment as Regional Administrator is invalid under the Appointments Clause of the United States Constitution. See id. at ¶¶ 8–9 (citing U.S. Const., Art. II, § 2, cl. 2). Specifically, the Commonwealth avers that Mr. Lett's appointment runs afoul of the Appointments Clause provision regarding "inferior" officers of the United States, which requires that such officers be appointed by "the President," "the Courts of Law," or the "Heads of Departments." See id. at ¶ 9; see also Pl.'s Br. in Supp. of Mot. for Summ. J. and in Opp'n to Mot. to Dismiss (Doc. 13, hereinafter cited as "Pl.'s Br.") at 6 (arguing that Regional Administrator position falls within classification of inferior officer).[2] The Commonwealth seeks a ju-

---

1. The other Defendants are the United States of America and the United States Department of Health and Human Services. See id. at 3. Mr. Lett and these entities will hereinafter be referred to collectively as "the Defendants."

2. The Commonwealth filed contemporaneously with its papers in opposition to the Defendants' motion to dismiss a motion for summary judgment. See Pl.'s Mot. for Summ. J. (Doc. 12). Provided the District Court adopts the instant Report and Recommendation and denies the Defendants' motion to dismiss, this

dicial declaration that Mr. Lett's appointment was invalid and requests that he be enjoined from "exercis[ing] the authority of Regional Administrator until he is properly appointed consistent with" the Constitution. *See* Compl., Wherefore clause at ¶¶ b-c.

In their motion to dismiss, the Defendants assert: that the Commonwealth lacks standing to challenge Mr. Lett's appointment; that its claims are not ripe for judicial review; and that judicial review under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ("the APA" or "the Act"), is unavailable because there has been no final agency action. *See generally* Defs.' Mem. in Supp. of Mot. to Dismiss (hereinafter cited as "Defs.' Mem.") at 4–13. As shown below, none of these arguments warrant a dismissal of this case and the Defendants' motion therefore should be denied.

### B. General Background

The Administration for Children and Families ("the ACF") is an "operating division" of the United States Department of Health and Human Services ("the HHS"). *See* Defs.' Mem. at 3. The ACF "provides national leadership and direction to plan, manage and coordinate the nationwide administration of comprehensive and supportive programs for vulnerable children and families." *See id.* (citation omitted, quotations in original). Such programs provide federal funding to state governments, including the Commonwealth. *See id.*

The ACF is headed by the Assistant Secretary for Children and Families ("the Assistant Secretary"), who reports directly to the Secretary of the HHS ("the Secretary"). *See id.* The ACF has ten regional offices, which "oversee the programmatic and financial management ... of ACF programs" in their regions and "provide guidance and assistance to the various entities responsible for administrating the program." *See id.* (citation omitted). Each of the regional offices is headed by a Regional Administrator; Mr. Lett is the Regional Administrator for the regional office responsible for the Commonwealth. *See id.* at 4. The Commonwealth avers that Mr. Lett "was [unconstitutionally] appointed by an HHS personnel officer with the approval of the Assistant Secretary...." *See* Compl. at ¶ 9.[3]

Although the Plaintiff's pleadings do not specifically reference the matter, the Defendants moving papers highlight that Mr. Lett has "issued two disallowances" regarding claims submitted by the Commonwealth for federal financial participation in paying expenses "on behalf of children in ... the state's juvenile justice system ...." ("the disallowances"). *See* Defs.' Mem. at 8; *see also generally* Compl. at ¶ 7 ("Pennsylvania is affected by [Mr. Lett's] decisional authority on an ongoing basis in the day to day administration of ... various Federal State cooperative programs"). The Defendants also highlight that the Commonwealth has appealed the disallowances to the HHS's Departmental Appeals Board ("the Appeals Board") and that "no final agency decision has been issued." *See* Defs.' Mem. at 8.

### ANALYSIS

I. *The Commonwealth Has Standing to Challenge the Constitutionality of the Regional Administrator's Appointment.*

A. *Standing in General*

■ Constitutional standing, which derives from the "case" or "controversy" requirement in Article III, requires a plain-

---

magistrate judge will address the Plaintiff's motion for summary judgment in a separate report and recommendation.

**3.** The Defendants maintain that the Mr. Lett was "selected" by the Assistant Secretary, to whom the Secretary has properly delegated "the final selection authority for all Regional Administrators." *See* Affid. of D. Dawson, attached as ex. to Defs.' Reply in Supp. of Mot. to Dismiss (Doc. 19, hereinafter cited as "Defs.' Reply Br."), at ¶¶ 10, 13.

tiff to demonstrate: (a) that it has suffered "injury in fact"; (b) that the injury is "fairly traceable" to the actions of the defendants; and (c) that the injury will likely be redressed by a favorable decision. *Conte Bros. Auto., Inc. v. Quaker State–Slick 50, Inc.,* 165 F.3d 221, 225 (3d Cir. 1998) (citations omitted, quotations in original). In ruling on a motion to dismiss for want of standing, the court must "accept as true all material allegations of the complaint and construe them in favor of the plaintiff." *See id.* at 224 (citations omitted).[4]

■ The Defendants' standing argument focuses primarily on the Commonwealth's purported lack of injury-in-fact. *See, e.g.,* Defs.' Mem. at 5–8. Specifically, Defense counsel argues that "the Commonwealth does not allege that it suffer[ed] any direct or immediate injury as a result of the allegedly unconstitutional appointment of" Mr. Lett. *See id.* at 7. While acknowledging the disallowances referenced above, the Defendants argue that "any injury … is at this point purely speculative" because the appeals of those decisions are still pending before the Appeals Board "and no final agency issue has been issued." *See id.* at 8.

This magistrate judge's review of the published case law of the Third Circuit has failed to identify any precedent addressing the issue of standing within the context of an Appointments Clause challenge. Persuasive authority from other circuits, however, reveals some disagreement between the courts regarding the standards governing Appointments Clause standing. Specifically, the case law reveals two lines of thinking: courts that view injury in terms of harm(s) visited upon the plaintiff independent of the alleged constitutional infirmity; and courts that view harm within the context of the alleged constitutional violation itself, *i.e.,* whether the plaintiff has been subjected to the adverse authori-

ty of an improperly appointed officer of the United States. *See* discussion *infra* at 920–24.

Having reviewed the case law presenting these competing theories, this magistrate judge concludes that the decisions defining harm as encompassing the plaintiff's subjection to the authority of unconstitutionally appointed officer are not only better reasoned, but are also more in line with recent Supreme Court precedent regarding the Appointments Clause. Under this more compelling line of cases, the Defendants' standing challenge fails and their motion to dismiss should be denied.

B. *Decisions Addressing Standing Within the Context of an Appointments Clause Challenge and an Application of the Standards Annunciated Therein.*

One of the first cases to find standing in an Appointments Clause challenge based on the plaintiffs' allegedly being subjected to the authority of an improperly appointed officer was *Andrade v. Lauer,* 729 F.2d 1475 (D.C.Cir.1984). There, employees of a federal agency brought an action challenging their termination in a reduction in force on the basis, among others, that the officials who planned and executed the reduction were occupying their offices in violation of the Appointments Clause. *See id.* at 1479. The district court dismissed the plaintiffs' constitutional claim for want of standing, and the circuit court reversed.

In explaining why the plaintiffs possessed standing, the *Andrade* Court aptly summarized the nature of their constitutional claim:

[A]ppellants allege[ ] that they [were] improperly deprived of their jobs because [the officers] had no constitutional authority to carry out the RIF they … planned. … They do not deny that they could be fired under some circum-

---

4. Under these standards, the court must assume for the purposes of the Defendants' motion that Mr. Lett was an inferior officer and

that he was appointed in violation of the Appointments Clause.

stances, but rather *object to their having been fired by government officials who were constitutionally disqualified from exercising power over them.*

*Id.* at 1495 (emphasis added).

The *Andrade* Court rejected the defendants' argument that the plaintiffs lacked standing because they failed to show that, had the officials been constitutionally appointed, they would not have been terminated through the reduction in force. The circuit court explained that the Appointments Clause "would be [rendered] a nullity if it could be assumed that the[ ] ... officials would in fact have been properly appointed," and that such an analysis would eviscerate "the framework of the system of checks and balances put in place by" Constitution. *See id.*

The district court in *Olympic Fed. Sav. & Loan Ass'n v. Director, Office of Thrift Supervision,* 732 F.Supp. 1183 (D.D.C.) also framed the standing inquiry in terms of the plaintiff's subjection to the authority of an official alleged to have been unconstitutionally appointed. *See id., appeal dismissed,* 903 F.2d 837 (1990). There, the plaintiff-savings and loan association sought to enjoin the defendants from placing a conservator or receiver over it because the officials in question were allegedly "unconstitutionally appointed and therefore ha[d] no legal authority to appoint" such a conservator or receiver. *See id.,* 732 F.Supp. at 1184–86. In granting the plaintiff's motion for a preliminary injunction prohibiting the placement of a conservator or receiver, the district court rejected the defendants' standing challenge. *See id.* at 1188.

The *Olympic* Court highlighted the distinction between the adverse action motivating the plaintiff's action (*i.e.,* the potential appointment of a conservator or receiver) and the plaintiff's harm in being subjected to the authority of an unconstitutionally appointed officer. The court explained:

Defendant alleges that plaintiff's ultimate difficulty is its failure to meet legislatively mandated capital standards which must be imposed by whomever is [appointed to] the head of [the governmental entity at issue]. . . .

*Defendant's argument ignores a critical element of plaintiff's claim.* In the end, plaintiff clearly hopes to avoid having a conservator or receiver appointed for it. *However, this is not all plaintiff seeks.* Part of plaintiff's claim is that, under the Constitution ... [,] *it is subject to regulation only by individuals with legal authority to act.* ... This is the essence of plaintiff's constitutional claim: because [the official] was not properly appointed, he has no more right to exercise the ... appointment powers than this court does. *And this is the injury which a finding for plaintiff on its constitutional claim would redress: the injury which any citizen suffers when its government acts unconstitutionally against it.*

Even if a receiver or conservator ultimately is appointed, success on plaintiff's constitutional claim would protect its right to demand that those who act against it on behalf of the government do so both lawfully and constitutionally.

*See id.* (emphasis added).

The *Olympic* Court went on to state that, were it to accept the defendants' invitation to focus exclusively on the immediate adverse decision the plaintiff sought to avoid (*i.e.,* the potential institution of a conservator or receiver), "the protections conferred by" the Appointments Clause would be rendered "meaningless." *See id.* at 1189. The court concluded that it would "not accept this proposition" because doing so would render "the procedural protections conferred by ... the Constitution ... nothing more than hollow gestures at the appearance of democracy. *The Appointments Clause subjects the selection process to public scrutiny, thereby affecting who takes office, how they perceive their function, and how they exercise their*

powers." *See id.* (citations omitted, emphasis added).

Finally, the circuit court in *Landry v. F.D.I.C.,* 204 F.3d 1125 (D.C.Cir.) adopted a similar reasoning. *See id., cert. denied,* —— U.S. ——, 121 S.Ct. 298, 148 L.Ed.2d 239 (2000). In that case, the plaintiff sought to challenge the FDIC's having removed him from a bank officer position based on the Appointments Clause. Specifically, the plaintiff alleged that an ALJ who issued a decision recommending his removal was improperly appointed by "a set of agencies that [we]re not ... heads of departments," as contemplated in the Appointments Clause. *See id.,* 204 F.3d at 1130. The district court ruled that the plaintiff lacked standing to level such a constitutional challenge, and the circuit court reversed.

The *Landry* Court rejected the defendant's argument that, because the FDIC conducted a *de novo* review of the ALJ's dismissal recommendation prior to adopting it, the plaintiff suffered no harm from the ALJ's allegedly unconstitutional appointment. *See id.* Before demonstrating the infirmity of this argument, the circuit court laid the framework for its standing analysis, stating: "The Supreme Court has .... classified the Appointments Clause as 'structural,' because of its purpose to prevent encroachment of one branch on another and to preserve the Constitution's structural integrity...." *See id.* The circuit court observed that, even though the plaintiff's "injury ... may be questionable" because of the FDIC's *de novo* review of the ALJ's recommendation, Supreme Court precedent "indicates that judicial review of an Appointments Clause claim will proceed *even where any possible injury is radically attenuated." See id.* at 1130–32 (emphasis added). The circuit court observed, moreover, that "[t]here is certainly no rule that a party claiming constitutional error in the vesting of [governmental] authority must show a direct causal link between the error and the authority's adverse decision." *See id.* at 1131.

In turning to the defendant's argument that the FDIC's *de novo* review of the ALJ's recommendation cleansed any harm of the alleged constitutional violation, the *Landry* Court stated:

[The] Appointments Clause analysis [regarding] purely decision[-]recommending employees presents a special problem. Suppose that a purely recommendatory power, *i.e.,* one followed as here by *de novo* review, can make an employee an 'inferior officer' within the meaning of the Appointments Clause—a hypothesis we must assume....

If the process of final *de novo* review could cleanse the violation of its harmful impact, *then all such arrangements would escape judicial review .... [T]o refuse to entertain [the plaintiff's] claim is to rule, in effect, that officers holding purely recommendatory powers subject to de novo review are not 'inferior officers[']'* ....

[Otherwise,] even if we assume that a pure power to recommend is enough to lift an employee into the August "inferior officer" realm, it is not enough to taint the ultimate judgment and thus give the loser a chance to raise the [Appointments Clause] issue.

*Id.* at 1132 (emphasis added).

Although the analyses in *Andrade, Olympic,* and *Landry* differ in some respects, a common thread runs through each of those decisions: an Appointments Clause challenge runs deeper than any immediate adverse governmental action a plaintiff may seek to avoid; it also entails the plaintiff's subjection to an exercise of power by an unconstitutionally appointed officer. Because the court finds this analysis to be well reasoned, it rejects the decisions cited by the Defendants to the extent they are inconsistent with it.

In *Reuss v. Balles,* 584 F.2d 461 (D.C.Cir.), for example, the circuit court held that a congressman lacked standing as a bond holder to raise an Appointments

Clause challenge regarding certain members of the Federal Reserve System. *See id.* at 463–64, *cert. denied sub nom,* 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978).[5] While the *Reuss* Court, in finding a lack of standing, ultimately relied on the plaintiff's failure to identify "concrete injury," it also stated:

> There is no reason to believe that a declaration ultimately resulting in presidential appointment of the [officers in question] would benefit the [plaintiff] in any manner whatever. . . .

> Indeed, the [governmental body at issue] . . . . would continue to operate as a seven-member group until the new appointments were made, and there is nothing, short of speculative inference, to indicate that [the plaintiff's] interests would be affected to any degree by this development.

*See id.* at 469, 471.

Although these statements were made within the context of an injury far more remote than presented here (*see* discussion *infra* at 924–25), this magistrate judge believes that the *Reuss* Court's analysis "asks precisely the wrong question." *See Andrade,* 729 F.2d at 1495. The question is not whether the adverse governmental decision would have occurred even if the challenged officer were properly appointed, as such reasoning would render the Appointments Clause a "nullity." *See id.* The proper inquiry is whether the plaintiff was subjected to the adverse action of an unconstitutionally appointed officer.

The reasoning in *Northwest Envtl. Def. Ctr. v. Brennen,* 958 F.2d 930 (9th Cir. 1992), also relied upon by the Defendants, appears to suffer this same infirmity. There, the "major issue on appeal" was whether certain federal regulations regarding "overfishing" were in violation of a federal statute. *See id.* at 932. After concluding they were not, the circuit court

rejected the plaintiff's Appointments Clause challenge, stating:

> Whatever constitutional infirmity may inhere in the [governmental body's] structure has not caused the injury of which [the plaintiff] complains. Nor would a declaration that the Council's composition violates the Constitution redress that injury. . . . [The plaintiff's] injury [*i.e.,* the impact of the allegedly defective regulations] cannot be fairly traced to the alleged constitutional infirmities of the Council, and the relief sought on the constitutional claims would not redress that injury.

*See id.* at 937–38 (citations omitted).

To the extent *Brennen* may be read to state or imply that a plaintiff subjected to the adverse actions of an unconstitutionally appointed officer must show that a constitutionally proper appointment would have prevented a specific adverse decision, the District Court should reject this line of reasoning.

This magistrate judge concludes that the standing analyses in *Andrade, Olympic,* and *Landry* provide the appropriate framework for determining whether the Commonwealth has standing to assert its Appointments Clause challenge. The court may now turn to the elements of standing the Plaintiff must possess, namely injury-in-fact, traceability and redressability.

■ With respect to injury-in-fact, the Plaintiff has suffered a concrete harm as a result of Mr. Lett's allegedly unconstitutional exercise of adverse authority over it: Mr. Lett has disallowed federal financial participation regarding claims submitted by the Commonwealth. *See* discussion *supra* at 919–20. This fact distinguishes the instant case from precedent relied upon by the Defendants. In *Reuss,* for example, the plaintiff alleged that he "might" suffer harm from the challenged appointments

ations not material to the court's standing analysis here.

because the officials' actions "could reduce the value of his bonds in several ways." *See id.*, 584 F.2d at 310–11. The circuit court found such alleged injury too speculative to confer standing, noting that it was "beyond [the court's] power to address injuries that are merely conjectural." *See id.* at 311. In *Committee for Monetary Reform v. Board of Governors of Federal Reserve System*, 766 F.2d 538 (D.C.Cir. 1985), a case presenting claims and circumstances materially identical to those in *Reuss*, the court explained why the injury alleged was too speculative to confer standing:

> It is entirely speculative whether the influence of the [challenged] members is responsible for the [policies of which the plaintiff complained].... *[I]n light of the complexity of the modern economy, it is also highly uncertain whether and to what extent such policies were responsible for the adverse economic conditions that allegedly resulted in harm .... We think that courts lack both the competence and the authority to determine such abstract issues, which are better addressed through political and economic debate over the role of monetary policy in the national economy.*

*See id.* at 542 (emphasis added).

Unlike the plaintiffs in *Reuss* and *Committee for Monetary Reform*, the Commonwealth need not speculate as to whether Mr. Lett's exercise of authority caused it harm; the Regional Administrator's issuance of the disallowances constituted a direct exercise of his allegedly unconstitutional authority.

The courts' analyses in *Reuss* and *Committee for Monetary Reform* provide another basis, moreover, for distinguishing the instant case: the plaintiffs in those cases were not "directly subject to the governmental authority they [sought] to challenge...." As the court in *Committee for Monetary Reform* explained:

> [T]he appellants here do not allege they are directly subject to the governmental authority they seek to challenge, but

merely assert that they are substantially affected by the exercise of that authority....

> We believe that to allow all persons indirectly affected by an agency's decision to challenge its constitutional authority would open up the courts to generalized grievance[s] shared in substantially equal measure by all or a large class of citizens, and thereby require the courts to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.

*See id.* (internal quotations and citations to footnotes omitted); *see also Reuss*, 584 F.2d at 469–70 (standing absent because challenged official did "not adjudicate [the plaintiff's] rights in any respect" and plaintiff's grievances were "very generalized" and were held "to some degree, by virtually all members of the public").

Here, there can be no debate that the Commonwealth is "directly subject to the governmental authority [it] seek[s] to challenge." Also absent is any concern regarding the adjudication of "generalized grievance[s] shared in substantially equal measure by all or a large class of citizens"; indeed, if there were ever an entity to appropriately challenge the allegedly unconstitutional appointment of Mr. Lett, it would be one of the governmental bodies (including the Commonwealth) subject to his authority.

▮ In arguing that the Plaintiff has not been injured, the Defendants rely heavily on the fact that the Commonwealth's appeals of the disallowances are pending before the Appeals Board and that no final agency issue has been issued. This magistrate judge finds that the Defendants' position lacking merit for two reasons. First, and most fundamentally, the Defendants' focus on the disallowances alone "ignores a critical element of [the]

plaintiff's claim." *See Olympic,* 732 F.Supp. at 1188. Just as the plaintiff in *Olympic* "clearly hope[d] to avoid having a conservator or receiver" assigned, it may be assumed that the Commonwealth hopes that Mr. Lett's disallowances will not be upheld. *See id.* Also like the plaintiff in *Olympic,* though, the Commonwealth seeks more, namely an assurance that "it is subject to regulation only by individuals with legal authority to act." *See id.* Regardless of how the Appeals Board rules on the disallowances, its resolution can in no way remedy the alleged constitutional infirmity identified herein. That question may only be addressed through the Appointments Clause challenge in this case.

The foregoing analysis may beg the question whether the Commonwealth must allege *any* harm beyond being subjected to an unconstitutionally appointed officer's exercise of authority. Indeed the court in *Landry* appears to have held that, so long as a plaintiff has been subject to such an unconstitutional exercise of authority, "judicial review of an Appointments Clause claim will proceed even where *any possible injury is radically attenuated.*" *See id.,* 204 F.3d at 1131 (emphasis added). The District Court here, however, need not go so far. In this case, the Commonwealth was harmed by Mr. Lett's exercise of his allegedly unconstitutional authority when he disallowed its claims for federal funds. Regardless of the outcome of the Appeals Board proceeding, the Commonwealth has identified a sufficiently concrete injury-in-fact to raise its Appointments Clause challenge.[6]

Second, and somewhat relatedly, this magistrate judge finds compelling the *Landry* Court's analysis regarding officials with "recommendation power" only. As noted above, if "the process of final ... review" by the Appeals Board "could cleanse the [Appointments Clause] violation of its harmful impact, then all such arrangements would escape judicial review." *Id.* at 1132. This court agrees with the reasoning in *Landry,* moreover, that a refusal to entertain the Commonwealth's claim would be to effectively rule that Mr. Lett is not a inferior officer, *i.e.,* that his presumed "purely recommendatory powers" are "not enough to taint the ultimate judgment and thus give the loser a chance to raise the" Appointments Clause challenge.

In sum, the court concludes that Mr. Lett's disallowances of the Commonwealth's claims for federal funds constitute sufficient injury-in-fact to confer standing, regardless of the Appeals Board's ultimate decision.

■ For similar reasons, the court also concludes that the traceability requirement is satisfied. Traceability requires that there be a *"causal connection* between the injury and the conduct complained of," *i.e.,* that it is "not ... the result [of] the independent action of some third party not before the court." *See Schurr v. Resorts Int'l Hotel, Inc.,* 196 F.3d 486, 491 (3d Cir.1999) (citation and internal quotations omitted, emphasis added). Here, the gravamen of the Plaintiff's claim is that Mr. Lett exercised the decisional authority of an office to which he was not constitutionally appointed. His allegedly unconstitutional exercise of that authority resulted in the disallowances addressed by the parties. This is sufficient to establish the traceability/causation requirement. *See Andrade,* 729 F.2d at 1495 (causation requirement met where plaintiffs "object[ed] to their having been fired by government officials who were constitutionally disqualified from exercising power over them"); *cf. also Landry,* 204 F.3d at 1131 (holding same

---

**6.** Although the court is of the opinion that the disallowances, alone, constitute sufficient injury-in-fact, it also notes that the Commonwealth alleges more generally to have been "affected by [Mr. Lett's] decisional authority on an ongoing basis in the day to day admin-

istration of ... various Federal–State cooperative programs." *See* Compl. at ¶ 7. Under *Landry,* this allegation alone would appear sufficient for the purposes of constitutional standing. *See* discussion in text immediately *supra.*

and noting "[t]here is certainly no rule that a party claiming constitutional error in the vesting of [governmental] authority must show a direct causal link between the error and the authority's adverse decision").

Finally, when properly viewing the Commonwealth's claim in terms of Mr. Lett's allegedly unconstitutional exercise of authority, the redressability requirement falls readily into place. As the *Andrade* Court succinctly stated, "if the [plaintiff is] granted the relief [it] seek[s]—a declaration and injunction against [the challenged official] improperly exercising the powers of office against [it]—[its] injury will be redressed." *See id.*, 729 F.2d at 1495; *see also* discussion *supra* at 918 (Commonwealth seeks declaration that Mr. Lett's appointment was invalid and requests he be enjoined from exercising authority as Regional Administrator).

For all of the reasons stated above, this magistrate judge concludes that the Commonwealth has standing to assert its Appointments Clause challenge. And although the court believes that the preceding analyses demonstrate the deficiency of the Defendants' assertions to the contrary, a few comments regarding Defense counsel's treatment of the *Landry* case are warranted.

Defense counsel goes to great lengths in attempting to distinguish *Landry*, stating that Plaintiff's counsel "misreads th[at] . . . decision." *See* Defs.' Reply Br. at 5. Having carefully reviewed *Landry*, the court finds that it is the *Defendants'* reading of the case that is misguided.

First Defense counsel states that in *Landry*, "unlike here, there was no question that the plaintiff had suffered an injury in fact. . . ." *See id.* This is hardly how the *Landry* Court saw the case, as it stated that Landry's injury "may be questionable. . . ." *See Landry*, 204 F.3d at 1130.

Next, Defense counsel emphasizes the *Landry* Court's use of the phrase "separa-

tion of powers" in discussing the Appointments Clause. *See* Defs.' Reply Br. at 7 (asserting that, "while the [*Landry* C]ourt relaxed the . . . plaintiff's obligation to demonstrate a clear causal link in cases involving separation of powers," the instant case does not implicate that doctrine). Apparently, the Defendants would have the court attach some sort of talismanic quality to the *Landry* Court's use of that phrase. This the District Court should refuse to do.

While *Landry* does address Supreme Court precedent recognizing that the Appointments Clause serves "to prevent encroachment of one branch on another," *i.e.*, separation of powers, the opinion also identifies a second important function: the Clause *"preserve[s] the Constitution's structural integrity." See Landry*, 204 F.3d at 1131 (emphasis added) (*citing Freytag v. C.I.R.*, 501 U.S. 868, 878–79, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991)). The "structural integrity" observed by the Supreme Court includes "preventing the diffusion of . . . appointment power." *Freytag*, 501 U.S. at 878, 111 S.Ct. 2631; *accord Ryder v. U.S.*, 515 U.S. 177, 182, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995) ("The [Appointments] Clause is a bulwark against one branch aggrandizing its power at the expense of another branch, *but it is more: it preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power*.") (emphasis added, citations and internal quotations omitted). This additional function undoubtedly would be served by a favorable ruling on the Plaintiff's Appointments Clause challenge. *See id.; cf. also Olympic*, 732 F.Supp. at 1189 ("The Appointments Clause subjects the selection process to public scrutiny, thereby affecting who takes office, how they perceive their function, and how they exercise their powers."). Thus, the Defendants' separation of powers argument is entirely without merit.[7]

---

7. Tellingly, the Defendants say nothing in response to the *Landry* Court's analysis regard-

ing an Appointments Clause challenge to officials with "recommendation power" only.

II.  *The Commonwealth's Appointments Clause Challenge Is Ripe for Judicial Review.*

■  Its standing arguments aside, the Defendants also urge that the Plaintiff's "constitutional challenge ... is not fit for judicial review at this time." *See* Defs.' Mem at 11. This assertion is premised on the Defendants' notion that, if the Appeals Board finds Mr. Lett's "disallowances ... improper, there will be no need to address [the P]laintiff's constitutional challenge." *See id.* at 10.

This argument fails for many of the same reasons as do the Defendants' standing arguments. As noted above, the constitutional dimensions of the Commonwealth's claim will not be remedied by a favorable decision of the Appeals Board. Regardless of the outcome of its appeals, "success on [the] plaintiff's constitutional claim [here] would protect its right to demand that those who act against it on behalf of the government do so both lawfully and constitutionally." *See Olympic,* 732 F.Supp. at 1188.

In addition, the Defendants' assertion that the Plaintiff's constitutional challenge "is not fit for judicial review *at this time* " (*see* Defs.' Mem. at 11, emphasis added) begs the question: when would it ever be fit for judicial review?  Under the Defendants' reasoning, if the Appeals Board ultimately reverses Mr. Lett's disallowances, the constitutional question would evade review. The well-reasoned opinions of federal courts, including the Supreme Court, do not support this result. *See, e.g., Landry,* 204 F.3d at 1132 (if a higher authority's review "could cleanse the [Appointments Clause] violation of its harmful impact, then all such arrangements would escape judicial review"); *Ryder,* 515 U.S. at 182–83, 115 S.Ct. 2031 ("one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a deci-

sion on the merits of the question" because "[a]ny other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments").

III.  *The APA Has No Bearing on the Plaintiff's Ability to State A Constitutional Claim Regarding Mr. Lett's Appointment.*

Finally, the Defendants argue that the APA precludes judicial review of this case because there has been no "final agency action" by the HHS. The Defendants' argument regarding the APA is a red herring and, as such, does not support a dismissal of this case.

While it is true the Plaintiff's Complaint states that "[t]his is an action under the" APA, *see* Compl. at ¶ 1, all of the remaining averments in its pleadings reveal the true nature if its claim: the Commonwealth asserts a constitutional challenge regarding Mr. Lett's placement as Regional Administrator under the Appointments Clause. *See generally* Compl. It is noteworthy, moreover, that none of the cases cited by the parties or otherwise identified by the court have addressed an Appointments Clause challenge within the context of the APA.

Regardless of the Complaint's seemingly superfluous reference to the APA, the Commonwealth has asserted a viable constitutional challenge under the Appointments Clause. *See generally Miller v. Parsons,* 313 F.Supp. 1150, 1151 (M.D.Pa. 1970) ("Only when it appears to a certainty that no basis for relief is present under the stated facts to support the claim may the court dismiss due to the insufficiency of the claim."). The District Court possesses jurisdiction to entertain such a constitutional claim (*see generally* 28 U.S.C. § 1331) and the Defendants' arguments

*See* discussion *supra* at 926. This comes as little surprise, as that analysis flatly refutes the notion that the Appeals Board's review of

the disallowances can somehow cleanse the harm of Mr. Lett's allegedly unconstitutional appointment. *See id.*

regarding the APA do not warrant a dismissal of this action.

## CONCLUSION

For the reasons stated above, it is recommended that the District Court deny the Defendants' motion to dismiss. In accordance with the Magistrates Act, 28 U.S.C. § 636(b)($l$)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this report and recommendation are due by November 20, 2000. Responses to objections are due by November 30, 2000.

November 2, 2000.