

**FILED**

Dec 22 2017, 9:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kerry C. Connor
Attorney at Law
Highland, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eberaia Fields, | December 22, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 43A03-1704-CR-856 |
| v. | Appeal from the Kosciusko Superior Court - 3 |
| State of Indiana, | The Honorable Joe V. Sutton, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 43D03-1510-F6-642 |

**Vaidik, Chief Judge.**

# Case Summary

When Warsaw Police Department Officer Miles Reichard pulled over Eberaia Fields, Officer Reichard had not taken the statutory oath for law-enforcement officers. Fields filed a motion to dismiss the charges against him, and the trial court denied his motion, finding that although Officer Reichard had not been sworn in, he was acting as a de facto officer at the time of the stop.

The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment is deficient. The purpose of this doctrine is to protect the public by insuring the orderly functioning of the government despite technical defects in title to office. We find that Officer Reichard's failure to take the oath is a technical defect in his title to office. But because the record shows that Officer Reichard claimed the office, was in possession of it, and performed its duties under the color of appointment, we conclude that he was acting as a de facto officer at the time of the stop. We therefore affirm the trial court's denial of Fields's motion to dismiss the charges against him.

# Facts and Procedural History

The underlying facts in this case are undisputed. Officer Reichard pulled over Fields in the early-morning hours of September 12, 2015, due to a broken license-plate light. At the time of the stop, Officer Reichard was in full Warsaw Police Department uniform, was driving a marked Warsaw Police Department

patrol car, and identified himself as an officer with the Warsaw Police Department. Fields was ultimately charged with Level 6 felony operating a vehicle while intoxicated, two counts of Level 6 felony intimidation, and Class C misdemeanor violation of special-driving privileges. The State also alleged that Fields was a habitual vehicular substance offender.

In December 2016, Fields filed a motion to dismiss all charges against him because Officer Reichard "had not been lawfully sworn in to act with the authority of the Warsaw Police Department at the time of the stop and detention . . . on September 12, 201[5]." Appellant's App. Vol. III p. 38; *see* Ind. Code § 5-4-1-1(a) ("[E]very officer and every deputy, before entering on the officer's or deputy's official duties, shall take an oath . . . ."); *State v. Oddi-Smith*, 878 N.E.2d 1245, 1247-48 (Ind. 2008) (concluding that Section 5-4-1-1 applies to law-enforcement officers and that officers must take an oath before beginning official duties).[1]

At the hearing on Fields's motion to dismiss, evidence was presented that Officer Reichard began working for the Warsaw Police Department on November 9, 2014, and that he received his first paycheck a couple weeks later. Tr. Vol. II pp. 17-18. However, Officer Reichard did not have his oath of office administered and filed with the Kosciusko County Clerk until November 19,

---

[1] In that case, our Supreme Court ultimately found that the officer was properly sworn, but it noted that there "might well be other grounds on which the arrest of Oddi-Smith was valid, like the 'de facto officer' doctrine." *Oddi-Smith*, 878 N.E.2d at 1249.

2015—a year after he was hired and two months after he stopped Fields. Exs. A & B; Tr. Vol. II pp. 13, 19-21. The State presented additional evidence that before Officer Reichard began working for the Warsaw Police Department, he worked part-time for the Indiana University Police Department while he was attending college. As part of the training for that job, he went to the "Police Academy" and received, among other things, firearms training. Tr. Vol. II p. 32. Upon being hired by the Warsaw Police Department, Officer Reichard received a paycheck, health-insurance and retirement benefits, a uniform, handcuffs, a handgun, ammunition, a taser, a fully marked patrol car, and badge number 161. *Id.* at 36-40. He also underwent a two-week orientation and was supervised by a field-training officer for twelve weeks before he was allowed to patrol on his own. *Id.* at 31, 49-50. Finally, Officer Reichard acted with the approval and consent of the Warsaw Chief of Police.

[6] After additional briefing by the parties, the trial court denied Fields's motion to dismiss the charges against him, concluding that Officer Reichard was acting as a de facto officer when he stopped Fields on September 12, 2015.

[7] This interlocutory appeal now ensues.

# Discussion and Decision

[8] Fields appeals the trial court's denial of his motion to dismiss the charges against him. We generally review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *Tiplick v. State,* 43 N.E.3d

1259, 1262 (Ind. 2015). But where, as here, the arguments presented are questions of law, we consider them de novo. *Study v. State,* 24 N.E.3d 947, 950 (Ind. 2015), *cert. denied.*

[9] Fields contends that the de facto officer doctrine does not apply to "grant legal authority to a purported police officer to make a stop and arrest when the purported police officer has not taken" the required statutory oath. Appellant's Br. p. 6. The de facto officer doctrine is well established in the law. According to the United States Supreme Court, "The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995) (quotation omitted)[2]; *see also King v. State*, 397 N.E.2d 1260, 1268 (Ind. Ct. App. 1979) (explaining that the rule that the acts of a de facto officer are as valid as the acts of a de jure officer "is too familiar to the profession to need the citation of authority" and that the public "is not to suffer because those discharging the functions of an officer may have a defective title, or no title at all" (quotation omitted)). This doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken

---

[2] Fields argues that he is entitled to relief under *Ryder*. In *Ryder*, the United States Supreme Court found that the appointment of two of the three members of the Coast Guard Court of Military Review violated the Appointments Clause of Article II of the United States Constitution and that the actions of the two civilian judges were not valid de facto. 515 U.S. at 179. Accordingly, it reversed and remanded for a hearing before a properly appointed panel of that court. *Id.* at 188. Because *Ryder* was limited to constitutional challenges and this case involves a statutory challenge, *id.* at 182, *Ryder* does not apply to this case.

by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government **despite technical defects in title to office**." *Ryder*, 515 U.S. at 180-81 (emphasis added, quotation omitted); *see also* 63C Am. Jur. 2d *Public Officers and Employees* § 23 (2009) (explaining that the de facto officer doctrine "give[s] legal effect to public acts done under the color of law by persons not officers de jure" and that the purpose of the doctrine is "to ensure the orderly administration of government **by preventing technical challenges to an officer's authority**" (emphasis added, footnotes omitted)), § 237 ("**[T]he mere failure to comply with a technical requirement does not void the official's actions as to third parties and the public**, the acts being valid in the interest of justice." (emphasis added)). According to Indiana law, all that is required to make an officer de facto is that he (1) claim the office, (2) be in possession of it, and (3) perform its duties under the color of election or appointment. *Carty v. State*, 421 N.E.2d 1151, 1154 (Ind. Ct. App. 1981) (holding that if a deputy is performing duties under the color of appointment to office, "he is a de facto officer although some infirmities may exist which prevent the appointment from being valid. As a de facto officer he is a 'law enforcement officer'" for purposes of enhancing a defendant's battery conviction to a Class D felony due to the victim being a law enforcement officer).

[10] We find that Officer Reichard's failure to take the statutory oath was a technical defect. Applying the three-prong test from *Carty*, Officer Reichard claimed the office when he accepted the job and began working as an officer with the

Warsaw Police Department on November 9, 2014. From that date forward, Officer Reichard possessed the office. He was assigned a uniform, handcuffs, a handgun, ammunition, a taser, a fully marked patrol car, and badge number 161. And he openly performed the duties of an officer while being paid and employed by the Warsaw Police Department with the approval and consent of the chief of police. Accordingly, we conclude that he was acting as a de facto officer when he stopped Fields on September 12, 2015. *See* 80 C.J.S. *Sheriffs & Constables* § 38 (2010) ("[O]ne acting as deputy is a de facto officer notwithstanding the person has failed to file the requisite oath . . . . A vital element of de facto status of a deputy sheriff requires that the person be acting pursuant to the control, approval and consent of the sheriff." (footnotes omitted)); 67 C.J.S. *Officers* § 461 (2012) ("One duly appointed or elected to an office but who is in law disqualified to act, such as one who has failed to take the required oath . . ., is at least a de facto officer in that his or her acts are valid as to the public." (footnotes omitted)).[3] To conclude otherwise and to dismiss the charges against Fields would run counter to the very purpose of the de facto officer doctrine, which is to insure the orderly functioning of the government

---

[3] Fields cites only one case where a defendant was granted relief due to a police officer's failure to take the oath of office. *See Holloway v. State*, 342 So. 2d 966 (Fla. 1977). However, a requirement to applying the de facto officer rule in Florida is that the State must show that an innocent party relied on the apparent authority to his detriment. *Id.* at 968. Because the State did not make such a showing in *Holloway*, the Florida Supreme Court concluded that the officer was not a de facto officer. *Id.* It does not appear that any other jurisdictions have relied upon this case. *See State v. Roark*, 705 P.2d 1274, 1279 n.9 (Alaska Ct. App. 1985) (acknowledging *Holloway* and stating, "an actual showing of detrimental reliance by innocent persons has not generally been viewed as a prerequisite of the *de facto* officer doctrine.").

despite technical defects in title to office. We therefore affirm the trial court's denial of Fields's motion to dismiss.

[11]     Affirmed.


May, J., and Altice, J., concur.