UNITED STATES, Appellee

v.

Charles M. LANE, Airman First Class
U.S. Air Force, Appellant

No. 05-0260

Crim. App. No. S30339

United States Court of Appeals for the Armed Forces

Argued November 8, 2005

Decided September 20, 2006

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON, BAKER, and ERDMANN, JJ., joined. CRAWFORD, J., filed a
dissenting opinion.

Counsel

For Appellant: Major Andrew S. Williams (argued); Colonel
Carlos L. McDade and Lieutenant Colonel Craig S. Cook (on
brief); Lieutenant Colonel Mark R. Strickland.

For Appellee: Major Michelle M. Lindo McCluer (argued);
Lieutenant Colonel Robert V. Combs, Lieutenant Colonel Gary F.
Spencer, and Major John C. Johnson (on brief); Captain C. Taylor
Smith.

Amici Curiae for Appellant: Arthur W. S. Duff, Esq. (argued);
Jonathan D. Hacker, Esq., Garrett W. Wotkyns, Esq., Arthur B.
Spitzer, Esq., Eugene R. Fidell, Esq., Stephen A. Saltzburg,
Esq., and J. Abraham Sutherland (law student)(on brief) – for
the American Civil Liberties Union of the National Capital Area
and the National Institute of Military Justice.

Military Judge: Gregory E. Pavlik


**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

Pursuant to Article 66(a), Uniform Code of Military Justice (UCMJ),[1] the Judge Advocate General of the Air Force assigns appellate judges to the United States Air Force Court of Criminal Appeals.[2] The Judge Advocate General of the Air Force assigned a Member of Congress, Senator Lindsey O. Graham, who was also a lieutenant colonel in the United States Air Force Standby Reserve at the time, as an appellate judge on the Air Force Court of Criminal Appeals. At the lower court, Appellant unsuccessfully challenged Senator Graham's sitting on the panel that affirmed his conviction and sentence.[3]

The Incompatibility Clause of the Constitution provides that "no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."[4] The issue before this Court is whether the assignment of a Member of Congress to the Air Force Court of Criminal Appeals is proper under the Constitution.[5] For the reasons set forth below, we conclude that a Member of Congress may not hold the office of appellate judge on a Court of Criminal Appeals.

---

[1] 10 U.S.C. § 866(a) (2000).
[2] Pursuant to Article 66(a), UCMJ, the Judge Advocate General of each service (Air Force, Army, Coast Guard, and Navy) has established a service Court of Criminal Appeals.
[3] United States v. Lane, 60 M.J. 781 (A.F. Ct. Crim. App. 2004).
[4] U.S. Const. art. I, § 6, cl. 2.
[5] Appellant expressly stated that he is not challenging Senator Graham's service in the military in general or his status as a Standby Reservist in particular, and we do not address those issues.

FACTS

At a special court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his plea, of wrongful use of cocaine, in violation of Article 112a, UCMJ.[6] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 135 days, and reduction to the lowest enlisted grade. The convening authority approved the sentence after modifying the confinement to a period of four months pursuant to a pretrial agreement.

The Air Force Court of Criminal Appeals reviewed the case pursuant to Article 66(b), UCMJ.[7] Under Article 66(c), UCMJ, the Court of Criminal Appeals conducts a de novo review of the record in such cases for legal sufficiency, factual sufficiency, and sentence appropriateness.[8]

Senator Graham served on the panel of the Court of Criminal Appeals that reviewed Appellant's case. Senator Graham is an officer in the United States Air Force Standby Reserve.[9] Pursuant to applicable regulations, he has been designated as a "key employee" assigned to the Active Status List within the Standby Reserve, where he is eligible to participate in reserve

---

[6] 10 U.S.C. § 912a (2000).

[7] Article 66(b), UCMJ, provides for review by a court of criminal appeals for cases in which the sentence extends to death, a punitive separation, or confinement for one year or more.

[8] See United States v. Cole, 31 M.J. 270, 272 (C.M.A. 1990)(referring to the Article 66(c), UCMJ, power of the lower court as an "awesome, plenary, de novo power of review").

[9] See 10 U.S.C. §§ 10141(a), 12301(a), 12306 (2000).

training activities without pay, earn retirement points, and compete for promotion.[10] Appellant moved to disqualify Judge Graham on several grounds, citing, inter alia, the Incompatibility Clause of the Constitution of the United States. The lower court denied the motion and affirmed the findings and the sentence.[11] Appellant has renewed his challenge to Judge Graham in his appeal to this Court.

## I. STANDING

Initially, we must address whether Appellant has standing to assert this claim of constitutional error. The present case is similar to Ryder v. United States,[12] in which the Supreme Court upheld a military petitioner's right to challenge "the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review."[13] In Ryder, the petitioner presented a constitutional claim based on the Appointments Clause of Article II of the Constitution.[14] The

---

[10] Dep't of Defense Dir. (DODD) 1200.7, Screening the Ready Reserve Enclosure 2 (Nov. 18, 1999); DODD 1235.9, Management of the Standby Reserve 4.2.1 (Feb. 10, 1998).
[11] Lane, 60 M.J. at 794.
[12] 515 U.S. 177 (1995).
[13] Id. at 182. The Coast Guard Court of Military Review is now the Coast Guard Court of Criminal Appeals.
[14] Id. at 180. The relevant provision of the Appointments Clause states:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and

Supreme Court stated, "[O]ne who makes a . . . challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred."[15]  In the present case, as in Ryder, Appellant also has raised a jurisdictional objection that the lower court is not properly constituted.  Appellant's position arises from the assignment of a Member of Congress as an appellate judge on the lower court and his participation on the panel that decided Appellant's case.  We conclude Appellant has standing under Ryder.

The Government contends that Appellant lacks standing to challenge the panel in his case because he has not suffered an injury to a legally protected interest.  Contrary to the Government's assertion, the constitutionality of the assignment of a person to serve as a judge on a Court of Criminal Appeals is not an abstract question.  The fact that a Member of Congress sat as a judge in this criminal case relates to the rights and liberties of a specific individual, Appellant.  The direct liberty implications for Appellant make this case distinct from

---

which shall be established by Law:  but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

[15] Ryder, 515 U.S. at 182-83.

other abstract circumstances where the Incompatibility Clause might be implicated.  Consistent with the Supreme Court position in Ryder, Appellant is entitled to a decision as to the constitutional validity of the appointment of an officer who adjudicated his case.[16]

The Government also contends that Appellant lacks standing because Incompatibility Clause determinations are the sole province of Congress.  In support of this contention, the Government asserts that the Incompatibility Clause constitutes qualification for congressional service, not a disqualification from executive branch service, making it a nonjusticiable political question.  The Government further asserts that, in any case, Congress would not find a violation because service in the Standby Reserve does not make a person an officer of the United States.

The issue before us is not whether the duties of a person in the Standby Reserve, in the abstract, are of sufficient significance to constitute an office of the United States for purposes of qualification to serve as a Member of Congress under the Incompatibility Clause.  The issue before us is whether a criminal conviction and sentence, which by statute can be sustained only by an affirmative appellate decision, may be

---

[16] See id.

6

reviewed by an appellate judge who simultaneously serves as a Member of Congress.

Under the Government's theory of standing, no citizen could cite the Incompatibility Clause in challenging a governmental decision bearing directly on the life, liberty, or property of the citizen. Members of Congress could serve as the heads of departments and regulatory agencies, simultaneously participating in the passage of legislation and in the execution of the laws. A person against whom such a law was executed, under the Government's theory, could not challenge the participation of Members of Congress in the enforcement and adjudication of rights under such laws. Under such a regime, the structural integrity of the Constitution would rest on a gravely weakened foundation. We reject all of the Government's arguments that Appellant lacks standing and proceed to the merits of this appeal.

## II.  BACKGROUND

### A.  SUPREME COURT PRECEDENT REAFFIRMING THE PRINCIPLE OF SEPARATION OF POWERS

In Buckley v. Valeo,[17] the Supreme Court emphasized the significance of the bedrock constitutional principle of separation of powers as this principle applies to the appointment and assignment of persons holding federal office.

---

[17] 424 U.S. 1 (1976).

7

In Buckley, the plaintiffs challenged the appointment of the Federal Election Commission members on separation of powers grounds. "The Court agreed with them and held that the appointment of four members of the commission by Congress, rather than the President, violated the Appointments Clause."[18]

In doing so, the Supreme Court reaffirmed the vital role of the separation of powers constitutional principle stating that "The principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787."[19]

In Buckley, the Supreme Court also analyzed and relied on related constitutional threads "woven into the document" tied to the principle of separation of powers -- the Appointments Clause and the Ineligibility and Incompatibility Clauses.[20] Importantly, the Supreme Court explained the close relationship among these clauses.[21]

After reviewing the primary sources of legislative, executive, and judicial powers, the Supreme Court observed:

---

[18] Ryder, 515 U.S. at 183 (explaining Buckley, 424 U.S. at 143).
[19] Buckley, 424 U.S. at 124.
[20] Id. The Ineligibility Clause provides: "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been [i]ncreased during such time . . . ." U.S. Const. art. I, § 6, cl. 2.
[21] Buckley, 424 U.S. at 124.

"The further concern of the Framers of the Constitution with maintenance of the separation of powers is found in the so-called 'Ineligibility' and 'Incompatibility' Clauses contained in Art. I, § 6 . . . ."[22]  The Supreme Court observed that these "cognate provisions" provided the context for interpreting the Appointments Clause of the Constitution.[23]

The Supreme Court in Buckley generally defined and thereby identified those federal government positions to which the Appointments Clause pertains.  The Supreme Court observed that the term "Officers of the United States" includes "all persons who can be said to hold an office under the Government."[24]  The Supreme Court also stated that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States'" under the Appointments Clause.[25]

## B.   SUPREME COURT PRECEDENT APPLYING THESE PRINCIPLES TO JUDGES APPOINTED TO A COURT OF CRIMINAL APPEALS

The Supreme Court applied these principles in a trilogy of Appointments Clause cases involving the assignment of persons to sit as judges on the Courts of Criminal Appeals.[26]  In so doing,

---

[22] Id.

[23] Id.

[24] Id. at 125-26 (quoting United States v. Germaine, 99 U.S. 508, 509-10 (1879)).

[25] Id. at 126.

[26] Weiss v. United States, 510 U.S. 163, 167-76 (1994); Ryder, 515 U.S. at 179-88; Edmond v. United States, 520 U.S. 651, 653-66 (1997).

the Supreme Court precedent defines and explains the status of judges on the Courts of Criminal Appeals.

In Weiss v. United States, the Supreme Court stated that military judges, including appellate judges, are "Officers" of the United States who "must be appointed pursuant to the Appointments Clause."[27]  The Supreme Court held that presidential nomination and Senate confirmation of a person as a military officer would satisfy the Appointments Clause with respect to the assignment of such an officer to the military judiciary.[28]

In Ryder, the second case, the Supreme Court addressed the assignment of two civilians by the General Counsel of the Department of Transportation to serve as judges on the Coast Guard Court of Military Review (now the Coast Guard Court of Criminal Appeals).[29]  During direct review, the servicemember had challenged the composition of the panel that reviewed his case under Article 66, UCMJ, on the ground that the civilian members had not been appointed by the President, a court of law, or the head of a department, as required by the Appointments Clause.[30]  The Supreme Court agreed, implicitly applying the pertinent reasoning of Weiss that judges on the Courts of Criminal Appeals are officers who must be appointed under the Appointments Clause.  The Court concluded that the constitutional violation

---

[27] 510 U.S. at 170.
[28] Id. at 176.
[29] 515 U.S. at 179.
[30] Id. at 180.

could not be cured by according de facto validity to the actions of the civilian judges.[31]

After noting that the Appointments Clause "is a bulwark against one branch aggrandizing its power at the expense of another," the Supreme Court added: "[B]ut it is more: it 'preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power.'"[32] The Supreme Court also noted that it would not invoke the de facto officer doctrine in a case involving "basic constitutional protections designed for the protection of litigants."[33] In the course of rejecting the government's contention that any error in the appointment of these appellate judges was harmless, the Supreme Court emphasized the unique powers of intermediate courts under Article 66, UCMJ, including their "broad[] discretion to review claims of error, revise factual determinations, and revise sentences."[34]

In the third case, Edmond, the Supreme Court considered the assignment of civilian judges at the Coast Guard Court of Criminal Appeals after appointment by the head of a department, the Secretary of Transportation.[35] The Supreme Court held that appointment by a department head met the terms of the inferior

---

[31] Id. at 188.
[32] Id. at 182 (quoting Freytag v. Commissioner, 501 U.S. 868, 878 (1991)).
[33] Id. (quoting Glidden Co. v. Zdanok, 370 U.S. 530, 536 (1962)).
[34] Id. at 187.
[35] 520 U.S. at 653.

officers provision of the Appointments Clause, and that the Constitution did not require presidential appointment and Senate confirmation of these judges.[36] The Supreme Court emphasized that treatment of the judges on the Courts of Criminal Appeals as "inferior officers" reflected the applicable supervisory hierarchy, including review by our Court.[37] The Supreme Court took the opportunity to underscore the significant authority exercised by judges on the Courts of Criminal Appeals as "Officers of the United States": "We do not dispute that military appellate judges are charged with exercising significant authority on behalf of the United States. This, however, is also true of offices that we have held were 'inferior' within the meaning of the Appointments Clause."[38] The Supreme Court added: "The exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in Buckley, the line between officer and non-officer."[39]

### III. DISCUSSION

Appellant asserts that the participation of a Member of Congress as an appellate judge in this case violates the Incompatibility Clause of the United States Constitution that

---

[36] Id.
[37] Id. at 662.
[38] Id. at 662 (citing Freytag, 501 U.S. at 881-82).
[39] Id. (citing Buckley, 424 U.S. at 126).

12

provides:  "no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."[40]  The Supreme Court has noted that "The Constitution thereby . . . prohibits Members of Congress from holding other offices through [this] limitation, the Incompatibility Clause."[41]

In Buckley, the Supreme Court reaffirmed the principle of separation of powers and the operation of both the Appointments Clause and the Incompatibility Clause to bolster this principle.[42]  As to the Appointments Clause, the Supreme Court stated it is critical to the structural integrity of the Constitution, not a mere form of "etiquette or protocol."[43]  Addressing the Incompatibility Clause, the Supreme Court stated that "The further concern of the Framers of the Constitution with maintenance of the separation of powers is found in the so-called 'Ineligibility' and 'Incompatibility' Clauses . . . ."[44]

Indeed, "the Incompatibility Clause plays a vital role in our constitutional scheme . . . by . . . reinforcing the separation of powers."[45]  Further, "the Incompatibility Principle has become one of the five great distinguishing structural

---

[40] U.S. Const. art. I, § 6, cl. 2.
[41] Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 210 (1974).
[42] Buckley, 424 U.S. at 124.
[43] Id. at 125.
[44] Id. at 124.
[45] See Stephen G. Calabresi & Joan L. Larsen, One Person, One Office:  Separation of Powers or Separation of Personnel?, 79 Cornell L. Rev. 1048 (1994).

features of our constitutional system, along with checks and balances, separation of powers, bicameralism, and federalism."[46]

We review the assignment of judges to the Courts of Criminal Appeals in the context of pertinent Supreme Court precedents addressing the Appointments Clause, described in Section II, supra. The Supreme Court has instructed "that the Constitution's terms are illuminated by their cognate provisions."[47] In view of the close relationship between the Appointments Clause and the Incompatibility Clause as "cognate provisions,"[48] the precedents developed under the Appointments Clause provide the appropriate framework for interpreting the Incompatibility Clause.

In the Appointments Clause cases discussed in Section II, supra, the Supreme Court emphasized that an appellate judge serving on a Court of Criminal Appeals exercises significant authority on behalf of the United States in adjudicating the rights of servicemembers. In that capacity, a judge on a Court of Criminal Appeals holds an "office under the government" that must be filled by an "Officer of the United States" under the Appointments Clause.[49]

In the context of the Incompatibility Clause -- a "cognate provision" -- the term "office" should be given the same

---

[46] Id.
[47] Freytag, 501 U.S. at 889.
[48] See Buckley, 424 U.S. at 124.
[49] See id. at 125-26 (citations and question marks omitted).

meaning.  Accordingly, the Incompatibility Clause -- which prohibits a Member of Congress from "holding any Office under the United States" -- precludes a Member from serving as an appellate judge on a Court of Criminal Appeals -- an "office" that must be filled by an "Officer of the United States."

The present problem before this Court is the judge's simultaneous service as a Member of Congress and an appellate judge.  The fundamental principle of separation of powers is the key to analyzing the relationship among branches of government as they apply to a citizen.  The structure of the Constitution provides for separate and shared powers among the branches.[50] This separation of powers was forged in the hard-earned lesson from history that executive, legislative, and judicial powers should not reside in one hand.[51]  One of the purposes served by the separation of powers is that a military accused will not be judged by a Member of Congress.  Service by a Member of Congress performing independent judicial functions runs afoul of the fundamental constitutional principle of separation of powers.

The present case does not require us to determine the qualification of an individual to serve as a Member of Congress; nor does it require us to define the scope of the standing of citizens in general to litigate the relationship between

---

[50] See Loving v. United States, 517 U.S. 748, 756-57 (1996).
[51] See id. at 756 ("Even before the birth of this country, separation of powers was known to be a defense against tyranny.").

15

congressional service and membership in the Reserves.[52] Military status simply is not an issue. The foregoing principles apply equally to all who would act as judges on the Court of Criminal Appeals, whether as a civilian or as a military officer.

In this case, a Member of Congress is serving in a position that requires the exercise of judicial power to affirmatively find beyond a reasonable doubt that an accused committed a criminal offense, that there is no prejudicial error, and that the sentence is lawful and appropriate.[53] A position that requires the exercise of those powers is an office of the United States and cannot be filled by a person who simultaneously serves as a Member of Congress. We conclude that Appellant has a right in such a proceeding to have his case decided by a judge who is not then a Member of Congress.

CONCLUSION

Like the servicemember in Ryder, Appellant in the present case properly challenged the constitutionality of the assignment of a person to serve on the panel reviewing his case.[54] The legal defect here is in the assignment of a Member of Congress to be a judge on the Air Force Court of Criminal Appeals. The assignment of a Member of Congress to serve in such an office violated the Incompatibility Clause, a provision essential to

---

[52] See Schlesinger, 418 U.S. at 213.
[53] See Article 66(c), UCMJ.
[54] See Ryder, 515 U.S. at 182-83; Calabresi & Larsen, supra note 45, at 1157 n.12.

the structural integrity of the Constitution.  As a result, the panel was not properly constituted.  Only a properly constituted appellate panel can complete the review required by Article 66, UCMJ.  Therefore, as in Ryder, the unconstitutional assignment at issue here invalidates the decision of the court below.[55]  The proceedings at the lower court are invalid and void.[56]

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for a new review by the United States Air Force Court of Criminal Appeals.

---

[55] Ryder, 515 U.S. at 188.
[56] See id.

CRAWFORD, Judge (dissenting):

I respectfully dissent from the majority's conclusion that the proceedings at the lower court are invalid and void for the following reasons.  First, assuming Appellant has standing, the majority's holding that the assignment of a Member of Congress who is a Standby Reserve officer to a panel of the lower court violates the Incompatibility and Ineligibility Clauses in Article I, Section 6 of the United States Constitution is inconsistent with the text, history, tradition, and precedent of the clauses.  Second, assuming a constitutional error, that error was harmless beyond a reasonable doubt.  Finally, assuming a constitutional violation, the majority's holding should be applied prospectively.  See Buckley v. Valeo, 424 U.S. 1, 142 (1976); Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87-88 (1982) (plurality opinion), superseded by statute, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333; Cipriano v. City of Houma, 395 U.S. 701, 706 (1969); Allen v. State Board of Elections, 393 U.S. 544, 572 (1969).

Pursuant to his pleas, Appellant was convicted of wrongfully using cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000).  After an extensive discussion under Rule for Courts-Martial (R.C.M.) 910, and this Court's precedent, see United States v.

<u>United States v. Lane</u>, No. 05-0260/AF

<u>Redlinski</u>, 58 M.J. 117 (C.A.A.F. 2003), the military judge accepted the plea and sentenced Appellant to a bad-conduct discharge, 135 days of confinement, and reduction to the lowest enlisted grade.  Pursuant to the pretrial agreement, the convening authority approved the sentence but reduced the confinement to four months.  During the appellate process, Appellant has had every opportunity to show actual prejudice or seek to disqualify Senator Graham on the basis of R.C.M. 902 and has not done so.

## TEXT, HISTORY, TRADITION, AND PRECEDENT

A.  Introduction

The Constitution sets up a governmental structure with three branches of government to serve as a check on each other because of their distinctive organizations, responsibilities, and procedures.  This principle of separation of powers, recognized in <u>United States v. Scheffer</u>, 523 U.S. 303, 311-12 (1998), permits the government to operate efficiently and preserves the initiative of those serving in the various branches and the right of ordinary citizens in exercising their right to vote.

> Over time, from one generation to the next, the
> Constitution has come to earn the high respect and
> even, as Madison dared to hope, the veneration of the
> American people. . . .  The document sets forth, and
> rests upon, innovative principles original to the
> American experience, such as federalism; a proven
> balance in political mechanisms through separation of

2

> powers; specific guarantees for the accused in
> criminal cases; and broad provisions to secure
> individual freedom and preserve human dignity.  These
> doctrines and guarantees are central to the American
> experience and remain essential to our present-day
> self-definition and national identity.

Roper v. Simmons, 543 U.S. 551, 578 (2005).

The checks and balances set forth below ensure that Senator Graham's position as an appellate judge is not incompatible with being a Member of Congress and does not interfere with the separation of powers between the executive, legislative, and judicial branches.

B.  Text

The Ineligibility and Incompatibility Clauses in Article I, Section 6 of the Constitution provide as follows:  "[n]o Senator . . . shall . . . be appointed to any civil Office under the Authority of the United States" and "no Person holding any Office under the United States shall be a Member of either House."[1]  Do the terms "civil Office" or "Office under the United States" include a trial or appellate judge in the military?

---

[1]  No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased [sic] during such time [commonly called the Ineligibility Clause or Emoluments Clause]; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

U.S. Const. art. I, § 6, cl. 2.

Certainly, the plain meaning of these clauses ensures that the branches of government remain structurally independent and that a Member of Congress is not in control of an executive branch as in a parliamentary system government. These clauses do not prohibit Senator Graham from serving both as a Standby Reserve officer and appellate judge on the United States Air Force Court of Criminal Appeals. Nor does the history of the text preclude Senator Graham's position as an appellate judge.

The Constitution appears to be exclusive in defining these responsibilities and powers permitting a balance and excluding one decision maker from usurping another's power. These powers do not fit into neat categories, but the Constitution is designed to secure, so far as possible, that the separation of powers boundary lines are not crossed. "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government." Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952).

C. History

The Journal of the Federal Convention was to be secret and William Jackson, Secretary, was required to destroy all scraps of paper. The notes of each member were turned over to him and the record was created. 1 The Records of the Federal Convention of 1787, at xi-xxv (Max Farrand ed., Yale Univ. Press 1966).

These notes, which the majority ignores, help in interpreting the intent of the drafters of these relevant provisions of the Constitution.

The original clauses in Article I, Section 6 of the Constitution were put forth by Edmond Randolph and "Res[olve]d that members of the First Branch of the National Legislature ought to be . . . ineligible to any office established by a particular State, or under the authority of the United States . . . during a term of service, and for the space of its expiration."  1 Farrand, supra, at 20.  The members were concerned about the President rewarding members of the legislature with official posts.  See id. at 386.  James Madison was concerned with the unnecessary creation of offices.  Id. Alexander Hamilton stated:

> Our prevailing passions are ambition and interest; and it will ever be the duty of a wise government to avail itself of those passions, in order to make them subservient to the public good for these ever induce us to action.  Perhaps a few men in a state, may, from patriotic motives, or the display of their talents, or to reap the advantage of public applause, step forward; but if we adopt the clause (ineligibility), we destroy the motive.

Id. at 381.

The Incompatibility Clause ensures separation of the branches and prevents one branch from rewarding another branch by giving it an appointment within that branch. Generally, the Incompatibility Clause is designed to

5

prevent full-time positions under certain circumstances, not part-time positions.  But such simultaneous holding of legislative and executive office does not:

> present an insuperable difficulty. . . .  In the face of this provision the President might still constitute a cabinet council out of the chairmen of the principal congressional committees and then put his own powers and those of the heads of departments at the disposal of this council.

Edward S. Corwin, The President, Office and Powers 1787-1957 14 (Randall W. Bland et al. eds., 5th ed. 1984); see also Harold J. Laski, The American Presidency, Interpretation 70-110 (1940); M. J. C. Vile, Politics in the USA 195-200 (1970).  The drafters thought that the simultaneous holding of offices by a Member of Congress would be permissible either as the head of an executive department or cabinet and being a Member of Congress with the right of attendance but not the right to vote.  Such a Member could participate in Congressional debate.  Corwin, supra, at 296.

    D.  Tradition

    The Incompatibility Clause was not designed to prevent Members of Congress from being members of the militia, the National Guard, or the Reserves.  See Schlesinger v. Reservist Comm. to Stop the War, 418 U.S. 208, 210 n.2 (1974).  If Professor Corwin is right that there may be "cabinet councils," then the Incompatibility Clause was not written to prevent a

Member of Congress from examining a defendant's case as a Standby Reserve officer, either working for points, or on two weeks of active duty. See Corwin, supra at 14. Senator Graham's commission was not created after he became a Member of Congress. How Senator Graham's career in the Air Force began and how it progressed demonstrates why the Incompatibility Clause does not apply. After graduation from the University of South Carolina School of Law, Senator Graham entered active duty and served as a judge advocate between January 1982 until August 1988 when he was transferred to the Air Force Reserve. Lane, 60 M.J. at 782; Project Vote Smart, http://www.vote-smart.org/bio.php?can_id=CNIP7869 (last visited Sept. 11, 2006). He then served in the Air National Guard from 1989 to 1994 and transferred back to the Air Force Reserve in 1995 where he has served to the present time. Lane, 60 M.J. at 782. There is no evidence that Senator Graham did not appear at various sessions of Congress or that he has taken positions that would be incompatible with his position as an appellate judge. If Senator Graham cannot perform his duties as a Senator, the selection process of standing for election may serve as a discriminator.

In addition to a majority exercising the ballot box, Article I, Section 5 of the Constitution provides that "[e]ach House may determine the Rules of its Proceedings [and] punish

7

its Members for disorderly Behaviour . . . ."  This provides congressional oversight.

If Congress thought there was a potential violation by Senator Graham, they were free to take action.  See U.S. Const. art. II, § 2, cl. 2.  Over the last few months, they have not. If a Member of Congress does hold an incompatible office, action has been taken against them when they sought to hold full-time positions during the Civil War.  See Cong. Globe, 37th Cong., 2d Sess. 343-44 (1862).  But when the Member resigned his commission before entering the Senate, no further action was taken.  Id. at 344.  Neither the text nor history of the Ineligibility and Incompatibility Clauses precludes Senator Graham from sitting as an appellate judge, but does precedent?

E.  Precedent

The President has the authority to nominate individuals to be federal officers who should be confirmed "with the Advice and Consent of the Senate."  U.S. Const. art. II, § 2, cl. 2.  That same provision provides that Congress has a role and that role is creating other officers "established by Law."  Id.  Congress may also vest the authority to appoint inferior officers with the President and other department heads.  Id.  The role of Congress and the President in appointing officers, including inferior officers, has been the subject of litigation in cases decided by this Court and reviewed by the Supreme Court.  See,

8

United States v. Lane, No. 05-0260/AF

e.g., Edmond v. United States, 520 U.S. 651 (1997); Ryder v.
United States, 515 U.S. 177 (1995).

"Officers of the United States" as used in the Appointments
Clause applies at least to commissioned officers and is not the
same as "civil Office under the Authority of the United States"
or "Office under the United States." Edmond, 520 U.S. at 656-66
(reappointment not needed because judges were "Officers of the
United States"); see also Weiss v. United States, 510 U.S. 163,
172-76 (1994); Ryder, 515 U.S. at 180-85.

We should not expand Edmond, Ryder, and Weiss beyond what
they hold. None of these cases cited by the majority has
addressed the Incompatibility or Ineligibility Clauses in
Article I. A number of the cases cited address presidential and
congressional authority under the Appointments Clause. In
Edmond, the Supreme Court held that military judges are inferior
officers appropriately appointed by the President and do not
have to be reappointed to serve as a trial or appellate judge.
520 U.S. at 656-66. While appointed by the Judge Advocate
General, they may not be subject to unlawful command influence.
Weiss, 510 U.S. at 180. The Supreme Court reemphasized that the
Court of Appeals for the Armed Forces and the Courts of Criminal
Appeals are Article I courts. Edmond, 520 U.S. 664 n.2. In
Weiss, the Supreme Court held that commissioned officers did not
need a reappointment under the Appointments Clause to serve as

9

military judges.  510 U.S. at 172-76.  The Supreme Court also

held that the Due Process Clause did not require fixed terms of

office for military judges.  Id. at 177-81.  In Ryder, the

Supreme Court again addressed the Appointments Clause and held

that a civilian member of the Coast Guard Court of Military

Review was not properly appointed to that court.  515 U.S. at

180-88.  In a reexamination of the Coast Guard Court of Criminal

Appeals in Edmond, the Supreme Court indicated that the judges

of that court were inferior officers who could be appointed by

the Secretary of Transportation.  520 U.S. at 666.

Both Edmond and Weiss imply that being a military judge,

which is an "inferior office," is not an "Office under the

Authority of the United States" under the Ineligibility Clause

or "holding any Office under the United States" under the

Incompatibility Clause.  While the framers gave little guidance

as to "inferior" and "principal" officers, the Supreme Court did

give more guidance as to the clauses in Edmond.  520 U.S. at

660-61.  In Freytag v. Commissioner, 501 U.S. 868, 881 (1991),

the Supreme Court held that special trial judges were officers,

albeit inferior officers, because their positions were

"established by law" under Article II, Section II, Clause 2 of

the Constitution, and their duty salaries and appointments were

specified by statute.  See also United States v. Germaine, 99

U.S. 508, 511-12 (1879).  Edmond dealt with the question of

United States v. Lane, No. 05-0260/AF

whether military judges required Senate confirmation because the judges were considered to be inferior officers rather than principal officers even though long-standing tradition was otherwise.  520 U.S. at 655-66.  The Supreme Court concluded that military trial judges did not have to be confirmed by the Senate.  Id.

Who may appoint inferior officers and who are heads of departments are entirely different questions than the issue presented here.  Justice Scalia explained in Edmond:

> Generally speaking, the term "inferior officer" connotes a relationship with some higher ranking officer or officers below the President:  whether one is an "inferior officer" depends on whether he has a superior.  It is not enough that other officers may be identified who formally maintain a higher rank, or possess responsibilities of a greater magnitude.

520 U.S. at 662-63.  The Supreme Court made clear in Edmond that inferior officers are officers whose work is directed and supervised at some level by others who are appointed by presidential nomination with the advice and consent of the Senate.  Id. at 659-63.  The majority reads too much into these opinions without focusing on their text, history, and precedent.

There is no indication in the UCMJ, including Article 67, UCMJ, 10 U.S.C. § 867 (2000), that appointing a Member of Congress to be a trial judge or an appellate judge is forbidden. In fact, Congress may well desire the synergism that would result from having a Member of Congress serving as a trial or

11

appellate judge in the military justice system.  Many reservists have served in the federal judiciary and state judiciary examining administrative actions by the services and have even reviewed some criminal cases, for example, Judge Haldane Robert Mayer, United States Court of Appeals for the Federal Circuit, and Judge James Leo Ryan, United States Court of Appeals for the Sixth Circuit, members of the Reserves.  No federal court has precluded those reviews.  The action by the majority would prevent Members of Congress as policy makers from obtaining a critical prospective on national security and the operation of the military justice system.  To hold that these inferior officers and individuals who have been commissioned, and are reviewing cases for points and not pay, have somehow advanced to principal officers that violate the Incompatibility or Ineligibility Clauses reads far too much into Supreme Court practice and the language of the Constitution.

To rely on the Incompatibility Clause to disqualify Senator Graham expands precedent and overlooks the practice of appointing members of the Senate to serve on diplomatic or semi-diplomatic missions.  See Corwin, supra, at 86.  It also undermines the practice of Members of Congress being members of the Reserves, National Guard, and militia.  The office held by Senator Graham existed prior to his serving on the appellate court.

HARMLESS BEYOND A REASONABLE DOUBT

If there was a violation of the Incompatibility Clause, Appellant has not established any actual adverse impact on his findings or sentence.  Both the Congress in enacting Article 45, UCMJ, 10 U.S.C. § 845 (2000), and the President in promulgating R.C.M. 910, have designed a system much more protective than the federal or state system to ensure that a truly knowing and voluntary plea was obtained in this case.  Thus, any error here would be harmless beyond a reasonable doubt.

PROSPECTIVE RULE

If relief is to be granted, it should be granted prospectively and not to all cases on direct review.  Griffith v. Kentucky, 479 U.S. 314, 321-22 (1987).  The efficient operation of the military justice system is important for maintaining good order and discipline in the armed forces.  In a number of cases the Supreme Court has recognized the public interest in avoiding retroactive invalidation of actions by public officials.  The Supreme Court has avoided retroactive application of decisions that challenge the appointment of officers or the exercise of their power.  Buckley, 424 U.S. at 142 (Appointments Clause violation); Northern Pipeline Construction Co., 458 U.S. at 87-88 (plurality opinion holding the unconstitutional grant of authority to bankruptcy judges did not invalidate prior acts); Cipriano, 395 U.S. at 706 (declining

13

to invalidate municipal bonds issued by unconstitutionally elected body).  While a trial should be free of constitutional violations, when, as in this case, an accused has shown no prejudice, there is no requirement for a readjudication of the findings or sentence.  The judges on the Courts of Criminal Appeals are an integral part of the military justice system and the failure to demonstrate any meaningful likelihood of prejudice requires affirmance of the court below.  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

## CONCLUSION

Assuming standing, the assignment of Senator Graham as an appellate judge is not inconsistent with the text, history, tradition, and precedent of the Incompatibility and Ineligibility Clauses.  Thus, I respectfully dissent.