23-7715-cv
*Flinton v. Comm'r of Soc. Sec.*

# In the
# United States Court of Appeals
# For the Second Circuit

_____

August Term, 2024
Argued: December 4, 2024
Decided: July 2, 2025

Docket No. 23-7715-cv

_____

MOLLIE MARIE FLINTON,

*Plaintiff-Appellant,*

*v.*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*\*

_____

Appeal from the United States District Court
for the Southern District of New York

_____

Before:     LYNCH, NARDINI, and LEE, *Circuit Judges.*

Plaintiff-Appellant Mollie Marie Flinton appeals from a judgment entered on September 11, 2023, in the United States District Court for the Southern District of New York (Gary R. Jones, *Magistrate Judge*), granting a motion for judgment on the pleadings in favor of Defendant-Appellee Commissioner of Social Security (the "Commissioner").   Upon review, we hold that pursuant to *Lucia v. SEC*, 585 U.S.

---

\* The Clerk of Court is respectfully directed to amend the case caption as set forth above.

237 (2018), Flinton is entitled to a new plenary hearing on her disability benefits before a different, properly appointed Administrative Law Judge ("ALJ").

ALJ Mark Solomon had not been properly appointed when he first conducted a hearing regarding Flinton's Social Security application and issued a March 2018 decision denying her benefits. Yet, after the United States District Court for the Southern District of New York (Lorna G. Schofield, *District Judge*) remanded Flinton's case on the merits to the Social Security Administration ("SSA") for a new hearing in 2020, Flinton appeared again before ALJ Solomon for a hearing in August 2021. Although, by this time, ALJ Solomon's appointment had been ratified by the Commissioner to comply with the Constitution's Appointments Clause, *Lucia* required that Flinton's application be heard by a different adjudicator.

Because the agency did not provide Flinton with the remedy *Lucia* mandates in these circumstances, we hold that ALJ Solomon rendered the Commissioner's final decision in violation of the Appointments Clause. Accordingly, without reaching the merits of Flinton's Social Security application, we **VACATE** the district court's decision with instructions to **REMAND** the matter to the Commissioner for a *de novo* hearing on Flinton's disability benefits claim before a different, validly appointed ALJ.

———————————————————————————

DAVID F. CHERMOL, Chermol & Fishman, LLC, Philadelphia, PA (Daniel S. Jones, Law Office of Charles E. Binder & Harry J. Binder, LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

ILAN STEIN (Benjamin H. Torrance, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellee*.

———————————————————————————

EUNICE C. LEE, *Circuit Judge*:

Plaintiff-Appellant Mollie Marie Flinton appeals from a judgment entered on September 11, 2023, in the United States District Court for the Southern District of New York (Gary R. Jones, *Magistrate Judge*), granting a motion for judgment on the pleadings in favor of Defendant-Appellee Commissioner of Social Security (the "Commissioner"). Upon review, we hold that pursuant to *Lucia v. SEC*, 585 U.S. 237 (2018), Flinton is entitled to a new plenary hearing on her disability benefits before a different, properly appointed Administrative Law Judge ("ALJ").

ALJ Mark Solomon had not been properly appointed when he first conducted a hearing regarding Flinton's Social Security application and issued a March 2018 decision denying her benefits. Yet, after the United States District Court for the Southern District of New York (Lorna G. Schofield, *District Judge*) remanded Flinton's case on the merits to the Social Security Administration ("SSA") for a new hearing in 2020, Flinton appeared again before ALJ Solomon for a hearing in August 2021. Although, by this time, ALJ Solomon's appointment had been ratified by the Commissioner to comply with the Constitution's Appointments Clause, *Lucia* required that Flinton's application be heard by a different adjudicator.

Because the agency did not provide Flinton with the remedy *Lucia* mandates

3

in these circumstances, we hold that ALJ Solomon rendered the Commissioner's final decision in violation of the Appointments Clause. Accordingly, without reaching the merits of Flinton's Social Security application, we **VACATE** the district court's decision with instructions to **REMAND** the matter to the Commissioner for a *de novo* hearing on Flinton's disability benefits claim before a different, validly appointed ALJ.

## BACKGROUND

In August 2015, Flinton applied for Social Security disability insurance and supplemental security income benefits, alleging that she had mental health disabilities since March 2015, when a psychotic episode caused her to be hospitalized for twenty days with a diagnosis of schizophrenia not otherwise specified. Approximately seven weeks after she applied, upon initial review, the SSA denied benefits. Flinton requested an administrative hearing to contest the denial and appeared before ALJ Mark Solomon in December 2017.

On March 5, 2018, ALJ Solomon determined that Flinton was not disabled for the purposes of the Social Security Act. The ALJ noted that Flinton had been diagnosed with various mental health disorders but had, at the time, been in treatment only "for generalized anxiety disorder." Cert. Admin. R. at 111. The ALJ concluded that Flinton's impairments did not equate to the severity of any of

4

the listings in 20 C.F.R. part 404, subpart P, appendix 1 (also known as the "Listing of Impairments") that would have compelled a finding of disability. Instead, accounting for non-exertional limitations associated with her symptoms, the ALJ found that Flinton had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, thus precluding her from benefits. On March 26, 2018, Flinton timely appealed ALJ Solomon's decision to the SSA Appeals Council.

In June 2018, as Flinton's administrative appeal was pending, the Supreme Court issued its decision in *Lucia v. SEC*, holding that the ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" within the purview of the Constitution's Appointments Clause. *See* 585 U.S. at 241 (citing U.S. Const. art. II, § 2, cl. 2). Specifically, because ALJs are "inferior officers," the Appointments Clause permits "[o]nly the President, a court of law, or a head of department" to appoint them to their positions. *Id.* at 244 & n.3. Because the SEC ALJ that "decided Lucia's case" had done so "without the kind of appointment the Clause requires"—the ALJ had been appointed by SEC staff members rather than the Commission itself—the Court remanded Lucia's case to be heard by a different, constitutionally appointed adjudicator. *Id*. at 251.

Apprehending *Lucia*'s implications for Social Security disability

adjudications, "on July 16, 2018, the Acting Commissioner of Social Security ratified the appointments of [SSA] ALJs and approved those appointments as her own." Social Security Ruling 19-1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019) ("SSR 19-1p").

In January 2019, the SSA Appeals Council denied Flinton's request for review. On March 6, 2019, pursuant to 42 U.S.C. § 405(g), Flinton commenced a civil action in the Southern District of New York to seek review of the Commissioner's final decision. Nine days later, on March 15, 2019, the SSA issued additional guidance to the Appeals Council that upon a "timely-raised Appointments Clause challenge," it should vacate ALJ decisions that predate ratification and generally "remand the case to an ALJ other than the ALJ who issued the [prior] decision." *Id.* at 9583. As pertinent to the present appeal, the parties do not dispute that ALJ Solomon had been unconstitutionally appointed at the time of the December 2017 hearing and the March 2018 decision, thereby rendering his denial of Flinton's disability benefits invalid.

But despite the Supreme Court's pronouncement one year earlier in *Lucia* and the SSA's guidance weeks into Flinton's federal lawsuit, Flinton did not raise an Appointments Clause claim before the district court. Instead, she contended that the ALJ's decision was "legally erroneous and not supported by substantial

6

evidence." *Flinton v. Berryhill*, No. 19-cv-02054, 2020 WL 5634462, at *19 (S.D.N.Y. Sept. 4, 2020) (internal quotation marks omitted), *report and recommendation adopted sub nom. Flinton v. Saul*, 2020 WL 5634321 (S.D.N.Y. Sept. 21, 2020).

In a comprehensive report and recommendation cataloging ALJ Solomon's missteps, Magistrate Judge Debra Freeman recommended granting Flinton's motion for judgment on the pleadings and remanding to the ALJ to, *inter alia*, consider additional treatment records, reconsider the weight assigned to various medical opinions, seek clarification to resolve perceived inconsistencies, reevaluate Flinton's subjective complaints, and reassess Flinton's RFC. Within weeks, District Judge Lorna G. Schofield adopted the recommendation. Accordingly, in November 2020, the Appeals Council vacated the March 2018 decision and remanded with instructions to afford Flinton an opportunity for a new hearing, to complete the record, and to issue a new decision.

Upon remand, ALJ Solomon—now with an appointment ratified by the Commissioner to be compliant with *Lucia*—conducted a second hearing with respect to Flinton's claims in August 2021. On November 1, 2021, the ALJ issued his second decision, this time determining that Flinton had been disabled during the closed period of March 2, 2015, to March 9, 2016. Specifically, the ALJ found that Flinton had met the criteria in the Listing of Impairments at the time of her

7

onset date because of her marked limitations in various functional domains, including social interaction, concentration, and adaptability. But the ALJ concluded that Flinton's impairments "medically improved" after March 9, 2016, such that she did "not meet or equal [the] listing and limits" identified in the regulation and had an RFC that would permit her to work in the national economy. Cert. Admin. R. at 1021. Flinton promptly appealed the unfavorable portion of the ALJ's decision to the Appeals Council on the merits; she did not raise any contentions under the Appointments Clause. On August 1, 2022, after considering and rejecting Flinton's exceptions to the decision, the Appeals Council declined to assume jurisdiction, making ALJ Solomon's November 1, 2021 decision the Commissioner's final decision.

In October 2022, Flinton once again sought judicial review and initiated the present civil action, primarily contending that: (1) "the ALJ's assessment of the medical opinion was flawed," (2) "the ALJ's credibility analysis" was deficient, and (3) the SSA had violated the Appointments Clause by assigning her case to ALJ Solomon on remand because she was "entitled to a new hearing before a different ALJ." *Flinton v. Comm'r of Soc. Sec.*, No. 22-cv-08418, 2023 WL 5917660, at *4 (S.D.N.Y. Sept. 11, 2023). Magistrate Judge Gary R. Jones, presiding by consent, rejected Flinton's arguments and affirmed the ALJ's decision. First, the

8

district court noted that the ALJ's decision permissibly discounted the medical opinions that indicated a greater degree of limitation after the end of the closed period. Second, the district court found that the ALJ's decision to discount Flinton's subjective complaints was supported by substantial evidence, given inconsistencies revealed by the treatment record. Lastly, the district court concluded that remanding the case to a new ALJ was unnecessary in Flinton's circumstances.

With respect to the Appointments Clause challenge, the district court acknowledged that although Flinton "did not initially contest ALJ Solomon's appointment," *id.* at *10, the Supreme Court's decision in *Carr v. Saul*, 593 U.S. 83 (2021), permitted her to challenge an ALJ's appointment "for the first time in federal court" without requiring administrative exhaustion. 593 U.S. at 95. But, in the district court's view, *Lucia* did not "create a bright line rule" that every Appointments Clause violation necessitates a hearing before a new ALJ. *Flinton*, 2023 WL 5917660, at *11. Rather, the district court concluded that because ALJ Solomon received the case on remand after a merits-based vacatur and then did not reach the same conclusions in the second decision as the first, the "main concern animating the remedy fashioned in *Lucia*"—that the ALJ would perfunctorily "reach all the same judgments" on remand—was not implicated.

*Id.* (internal quotation marks omitted).

On November 8, 2023, Flinton timely filed a notice of appeal.

## DISCUSSION

On appeal, Flinton contends that ALJ Solomon's second disability decision is infected by an uncured constitutional violation stemming from the first determination because she was not provided with a hearing before a different, constitutionally appointed ALJ in accordance with *Lucia*. The Commissioner counters that there is no Appointments Clause violation before us because ALJ Solomon "had been properly appointed by the time of the decision now under review." Appellee's Br. at 46. Assuming that there was a constitutional violation, the Commissioner additionally contends that remand would not be required since the original decision was vacated on the merits, thereby allaying any concern that ALJ Solomon would simply rubber-stamp his prior decision.

We review a district court's determination of "constitutional challenges" *de novo*. *Guo Qi Wang v. Holder*, 583 F.3d 86, 90 (2d Cir. 2009). The question before this Court is whether Flinton's second disability adjudication—by the then constitutionally-appointed ALJ Solomon—was still marred by the prior Appointments Clause violation, since Flinton did not receive *Lucia*'s remedy of a hearing before a different ALJ. We answer that question in the affirmative,

10

joining the Fourth and Ninth Circuits and parting ways with the Eleventh Circuit.

We explain our reasoning below.[1]

## I.     The Appointments Clause & Social Security Adjudications

The Appointments Clause delineates two paths for appointing "Officers of

the United States."   U.S. Const. art. II, § 2, cl. 2.   Only the President "shall

nominate, and by and with the Advice and Consent of the Senate, shall appoint"

principal officers.   *Id.*   But as to "inferior Officers," "Congress may by Law vest

the Appointment . . . in the President alone, in the Courts of Law, or in the Heads

of Departments."   *Id.*   The Appointments Clause not only serves as "a bulwark

against one branch aggrandizing its power at the expense of another," *Ryder v.*

*United States*, 515 U.S. 177, 182 (1995), but also "preserves another aspect of the

Constitution's structural integrity by preventing the diffusion of the appointment

power," *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991).

In *Lucia*, the Supreme Court held that SEC ALJs are inferior officers subject

to the Appointments Clause's requirements, rather than "simply employees of the

Federal Government."   585 U.S. at 244, 251.   The *Lucia* Court reasoned that the

SEC's ALJs: (1) "hold a continuing office established by law"; (2) "have all the

---

[1] Because we find that the district court erred in its assessment of Flinton's Appointments Clause challenge and thus vacate and remand for a new hearing on that basis, we do not reach the merits of the ALJ's November 2021 decision.

11

authority needed to ensure fair and orderly adversarial hearings" with "nearly all the tools of federal trial judges"; and (3) have "last-word capacity" to "issue decisions containing factual findings, legal conclusions, and appropriate remedies" on behalf of the SEC. *Id.* at 247–49. Because the ALJs wield "extensive powers," *id.* at 241, they could not be considered "lesser functionaries" exempt from the Appointments Clause, *id.* at 245 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) (per curiam)).

As inferior officers, SEC ALJs could be appointed only by the "President," "Courts of Law," or "Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Yet, the ALJ Lucia appeared before had been selected by staff members rather than the "[SEC] proper." *Lucia*, 585 U.S. at 241. Because Lucia timely challenged the constitutional validity of his adjudicator's appointment, he was "entitled to relief." *Id.* at 251. As for the relief warranted, the Supreme Court declared "that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id.* at 251 (quoting *Ryder*, 515 U.S. at 183, 188).

The *Lucia* Court went a step further to hold that the new hearing could not be conducted by the ALJ who had previously heard Lucia's case, "even if [the ALJ] has by now received (or receives sometime in the future) a constitutional

12

appointment," because that ALJ "cannot be expected to consider the matter as though he had not adjudicated it before." *Id.* at 251. The majority disagreed with Justice Breyer's contention in his partial dissent that having the same ALJ, after a constitutionally ratified appointment, "preside once again would not violate the structural purposes that . . . the Appointments Clause serves." *Id.* at 267 (Breyer, *J.*, concurring in the judgment in part and dissenting in part).

In a footnote, the majority explained that "Appointments Clause remedies are designed not only to advance [structural] purposes directly, but also to create incentives to raise [such] challenges." *Id.* at 251 n.5 (alterations adopted) (internal quotation marks omitted). A hearing before a new ALJ would best achieve that goal, "especially" because the prior adjudicator—whose decision had been vacated on Appointments Clause grounds—"would have no reason to think he did anything wrong on the merits." *Id.* The *Lucia* Court acknowledged that its holding does not mean "that a new officer is required for every Appointments Clause violation," but explained that the remedy presumptively applies where "other ALJs (and the Commission) are available to hear [the] case on remand," and might not apply if "there is no substitute decisionmaker." *Id.*

After *Lucia*, the Commissioner conceded that the SSA ALJs' appointments had been constitutionally infirm, ratified their positions, and provided that

13

"claimants who had raised an Appointments Clause challenge" before the agency would receive "fresh review by a properly appointed adjudicator" but those that had "not objected . . . in their administrative proceedings would receive no relief." *Carr*, 593 U.S. at 86–87 (citing SSR 19-1p). In April 2021, the Supreme Court disagreed with this issue-exhaustion requirement and held that an Appointments Clause challenge may be raised by a Social Security applicant "for the first time in federal court." *Id.* at 95.

*Carr* did not address a procedural posture exactly like Flinton's. Under *Carr*, Flinton would not have been untimely had she raised the Appointments Clause issue before the district court, even if she forwent doing so before the SSA ALJ or Appeals Council. *See id.* Here, however, Flinton did not bring that claim in her first civil action despite filing the action nine months after *Lucia*'s pronouncement. Nevertheless, we do not address whether Flinton forfeited her constitutional challenge by waiting to raise her Appointments Clause claim until her second federal lawsuit because the Commissioner did not raise that defense before the district court or on appeal. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012) (finding waiver of a defense that a litigant "refrain[ed] from interposing"); *cf. K & R Contractors, LLC v. Keene*, 86 F.4th 135, 145 (4th Cir. 2023) (finding that "[an agency] . . . waived [a petitioner's] forfeiture" because it was not raised "as a

ground for denying the petition" for review).

Before turning to the merits of Flinton's Appointments Clause challenge, we first note that the aftermath of *Lucia* and *Carr* has led to a circuit split (and disagreement among district courts within our Circuit) as to whether "there *is* an Appointments Clause violation at all" if an SSA ALJ who rendered an invalid original decision decides a disability adjudication on remand after receiving a constitutionally proper appointment. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1270–73 (11th Cir. 2024), *cert. denied sub nom. Raper v. O'Malley*, __ U.S. __, 145 S. Ct. 984 (2024); *see also Sandell v. Kijakazi*, No. 21-cv-4226, 2023 WL 6308050, at *3 (E.D.N.Y. Sept. 28, 2023) (collecting cases).

On the one hand, the Fourth Circuit and the Ninth Circuit have both held that a Social Security claimant is "entitled to an independent decision issued by a different ALJ if a timely challenged ALJ decision is 'tainted' by a pre-ratification ALJ decision." *Cody v. Kijakazi*, 48 F.4th 956, 963 (9th Cir. 2022); *see also Brooks v. Kijakazi*, 60 F.4th 735, 742 (4th Cir. 2023).

In *Cody*, the Ninth Circuit reasoned that "[r]equiring a remand and hearing before a new ALJ . . . supports the two remedial aims identified by *Lucia*:" (1) promoting the constitutional structure and design of the Appointments Clause; and (2) encouraging claimants to raise Appointments Clause violations since,

"[w]ithout a remand to a new ALJ, claimants like Cody would see little benefit in defending the constitutional requirement." 48 F.4th at 962. Even though Cody challenged the "post-ratification" decision, he was, under *Lucia*, "entitled to relief from any 'adjudication *tainted* with an appointments violation.'" *Id.* (quoting *Lucia*, 585 U.S. at 251 (emphasis added by *Cody*)). Because the ALJ in Cody's instance had "copied verbatim parts of the 2017 decision into her 2019 decision," Cody's application had evidently not been given a "fresh look" and the post-ratification decision had been obviously marked by prejudgment. *Id.* at 962–63.

In *Brooks*, the Fourth Circuit similarly found that a post-ratification decision was constitutionally defective and rejected the argument that a "merits-based" vacatur of an ALJ's earlier decision, unlike one based only on an Appointments Clause violation, obviated the need for the *Lucia* remedy because the ALJ could not simply rubber stamp the original decision if it had been vacated on the merits. 60 F.4th at 743. First, the Fourth Circuit agreed with Brooks that the "constitutional error" that existed pre-ratification was a "continuing violation that infected" the same ALJ's post-ratification decision, seeing as "Brooks never received the requisite remedy." *Id.* at 742. Next, the court explained that whether or not a pre-ratification disability determination was subject to a "merits-based vacatur simply is not relevant to Brooks's Appointments Clause challenge"

because returning a case to the same adjudicator "does not fully eliminate the problem identified by the *Lucia* Court that, on remand, the same ALJ would be hard pressed to 'consider the matter as though she had not adjudicated it before.'" *Id.* at 743 (alteration adopted) (quoting *Lucia*, 585 U.S. at 251).

On the other hand, the Eleventh Circuit held, in *Raper*, that when there is a merits-based vacatur of an ALJ's decision, as opposed to one based solely on an improper appointment, and the case is remanded to the same ALJ, now properly appointed, there is "no live Appointments Clause violation" requiring remand to a new ALJ. 89 F.4th at 1272. The Eleventh Circuit identified three reasons for this conclusion. First, the prior decision is "void and has no legal effect." *Id.* Second, the *Lucia* remedy "served the purpose of encouraging claimants to raise Appointments Clause challenges and was motivated by a concern that the old ALJ would have no reason to think he did anything wrong on the merits," and so does not apply when those purposes are not at stake because the decision has been vacated on the merits. *Id.* Third, the "entire judicial system works on the premise that a judge can set aside his or her earlier decision and look at a case anew," given the long-standing practice of remanding district court decisions to the same judge. *Id.*

For the reasons explained below, and in accord with the Fourth and Ninth

17

Circuits, our reading of *Lucia* compels a finding that Flinton has suffered an unalleviated Appointments Clause violation and must be afforded a new hearing before a different ALJ. We turn to the circumstances of the present appeal to explain why.

## I.      Unremedied Appointments Clause Violation

Before us, the Commissioner first formalistically contends that "[t]his case only concerns ALJ's Solomon second decision," which was issued by a then-properly appointed ALJ, thus resulting in no actionable Appointments Clause violation. Appellee's Br. at 48. But the Commissioner is mistaken. "[T]he entire administrative adjudication"—and ensuing federal litigation—started with Flinton's August 2015 application for benefits. *See Brooks*, 60 F.4th at 742 (internal quotation marks omitted). After a constitutionally invalid pre-*Lucia* March 2018 determination was remanded on the merits post-*Lucia*, Flinton appeared again before the same ALJ in August 2021. At that juncture, the prior "structural constitutional error . . . remain[ed] in place." *Id.* at 743.

In *Lucia*, the Supreme Court faced a scenario where the antecedent Appointments Clause violation was readily apparent because the ALJ was and continued to be improperly appointed throughout those proceedings. Here, the SSA rectified the Appointments Clause violation by properly ratifying ALJ

18

Solomon's appointment prior to his adjudication of Flinton's claims on remand. But the Supreme Court made clear that the remedy for any adjudication already "tainted with an appointments violation" is (1) a *de novo* hearing before a "properly appointed official," *and* (2) that official cannot be the one who conducted the original adjudication, even if "he has by now received (or receives sometime in the future) a constitutional appointment." 585 U.S. at 251. There would be no need for the second component of the remedy if an Appointments Clause violation were fully ameliorated by a plenary hearing before any properly appointed ALJ.

Since *Lucia* "did not carve out any exception to the remedy's necessity for situations where a constitutionally infirm ALJ decision has been vacated on a merits-related issue," *Brooks*, 60 F.4th at 743, we are not at liberty to create one here. Although the Eleventh Circuit notes that the Supreme Court anchored its command in vindicating the Clause's purpose and incentivizing litigants to raise the issue, *see Raper*, 89 F.4th at 1272, we do not view those proffered rationales as imposing preconditions for whether the remedy applies, *see Lucia*, 585 U.S. at 251 n.5. And since the remedy was not given to Flinton, the Appointments Clause violation remains uncured.

For largely the same reasons, the Commissioner's contention that the *Lucia* remedy of remand to a different ALJ is unnecessary here because "the ALJ's initial

decision was vacated on the merits, [so] there was 'no danger that the ALJ would lack notice of the deficiency in his earlier decision'" is a nonstarter. Appellee's Br. at 53 (quoting *Raper*, 89 F.4th at 1272). The Commissioner is right that ALJ Solomon's November 2021 decision did materially differ from his earlier determination. Unlike his March 2018 decision that Flinton was not disabled, ALJ Solomon found in November 2021 that Flinton was disabled and entitled to benefits for at least a yearlong period. On this basis, the Commissioner contends there is "no reason to think the ALJ did not take a fresh look at Flinton's claim." *Id.* (internal quotation marks omitted). But despite the different outcome, we cannot be certain that ALJ Solomon "consider[ed] the matter as though he had not adjudicated it before." *Lucia*, 585 U.S. at 251.

*Lucia* states that the remedy for an Appointments Clause violation is a hearing before a different ALJ. The decision does not exempt merits-based vacaturs and does not invite *ex post* scrutiny by federal courts to see if an ALJ's new determination is dissimilar enough from a prior assessment to be sufficiently untainted. *See id.* Instead, *Lucia* compels that "[t]o cure the constitutional error, *another ALJ* (or the [Commissioner]) must hold the new hearing to which [Flinton]

20

is entitled." *Id.* at 251–52 (emphasis added).[2] We are bound by the Supreme Court's instructions.

Moreover, as Flinton convincingly argues, the notion that a disability claimant who suffers only an Appointments Clause violation would receive a different ALJ on remand, but one who suffers *both* a merits-based error and a constitutional defect would "not be entitled to a different ALJ" creates a warped "remedial framework" where the "claimant who suffered more violations . . . would be accorded fewer remedies." Appellant's Reply Br. at 22 (emphasis omitted); *see also Brooks*, 60 F.4th at 743 ("[I]t would border on absurd to ignore a patent constitutional violation (and the remedy developed therefore) because of evidentiary defects in the constitutionally flawed proceedings.").

To be sure, the Ninth Circuit's holding does appear to turn on assessing the influence of the pre-ratification determination on the post-ratification decision. *Cody*, 48 F.4th at 963 ("We thus hold that claimants are entitled to an independent decision issued by a different ALJ if a timely challenged ALJ decision is 'tainted'

---

[2] The Commissioner argues that *Lucia* does permit this Court to "approve a remand to the same adjudicator" in certain scenarios. Appellee's Br. at 51 n.6. But the Supreme Court offers only one situation where that is permitted—under the "rule of necessity," which "kick[s] in" if "there is no substitute decisionmaker" because there is an "Appointments Clause problem . . . with the [agency] itself." *Lucia*, 585 U.S. at 251 n.5. The Commissioner does not contend that that exception was triggered, and we decline to find another.

by a pre-ratification ALJ decision."). We do not believe that such an ad hoc exercise—with its attendant questions of when a decision is sufficiently tainted—is necessary, since any post-ratification decision by the same ALJ is presumptively tainted by the pre-ratification assessment of an applicant's entitlement to disability benefits. Therefore, like the Fourth Circuit, we hold that if the *Lucia* remedy has not been awarded, despite a proper challenge in federal court, the applicant is entitled to a new hearing before a different ALJ.

\* \* \*

For the reasons set forth above, we remand this case to the Commissioner with instructions to assign Flinton's case to another validly appointed ALJ for a *de novo* hearing regarding her disability benefits.

## CONCLUSION

The judgment of the United States District Court for the Southern District of New York is **VACATED** and the case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.